IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT WILHELM, ) | |
| ) | |
| Petitioner, ) | Case No. CV-04-552-S-LMB |
| ) | |
| v. ) | **MEMORANDUM ORDER** |
| ) | |
| KEVIN KEMPF, Warden for the Idaho ) | |
| Department of Corrections in Orofino, Idaho, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Pending before the Court in this case is Respondent's Motion for Summary Judgment (Docket No. 10). All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket No. 28). Having considered the Motion, Petitioner's Responses and Addendums (Docket Nos. 14, 16, & 26), as well as the state court record in this case, the Court finds that oral argument is unnecessary. Hence, the Court enters the following Order.

**I.**

**BACKGROUND**

On August 29, 1995, Petitioner was found with seventy-five pounds of marijuana in his possession; he was arrested and charged with trafficking in marijuana. At that time, he was on supervised release for a federal criminal offense of cocaine possession. He later entered into an agreement with the United States Attorney General, wherein he agreed to provide information about his drug activities. In return, the United States granted him use immunity for statements made. *State's Exhibit D-1*, at pp. 2–3.

At the time of his arrest, the sum of $2,416.00 was seized from Petitioner.  Later, the Idaho Tax Commission assessed what it deemed a sales/use tax against Petitioner of $3,750.00, pursuant to I.C. § 63-3630 (sales tax provision of the Idaho Code).  *"Notice of Jeopardy Assessment (Sales/Use Tax)," Attachment to Petitioner's Response*, p. 9 (Docket No. 14).  Petitioner later argued, and argues here, that the tax assessed against him was pursuant to the Idaho Illegal Drug Tax Act, I.C. § 63-4201, *et seq.*

On March 26, 1997, after Petitioner had served two years in federal custody upon the revocation of his supervised release, an Idaho grand jury indicted Petitioner for possession of the seventy-five pounds of marijuana *and* for conspiracy to traffic in cocaine.  Petitioner later alleged, and here alleges, that the cocaine trafficking charge was the result of the State using statements of Petitioner for which he had been granted immunity.  *Petitioner's Response*, pp. 3–4 (Docket No. 14).

On June 15, 1998, as a result of entering a guilty plea in the First Judicial District Court in Kootenai County, Petitioner was convicted of trafficking in marijuana and being a persistent violator, and the cocaine trafficking charge was dismissed.  He received a sentence of seven years fixed with life indeterminate.  *Id*. at p. 5.

After an unsuccessful state post-conviction action, Petitioner filed this federal habeas corpus action.  In his Habeas Corpus Petition, he raises the following issues: (1) Did the district court err when it found no prejudice arising from trial counsel's failure to obtain the grand jury transcript? (2) Did the district court err when it found that the trial counsel was not ineffective for failing to pursue a permissive appeal on the double jeopardy issue?  (3) Did the district court err when it found no prejudice arising when trial counsel did not have Petitioner's immunized

MEMORANDUM ORDER  2

statements excluded from the Presentence Investigation Report and when it did not grant a new sentencing hearing?  *Petition*, p. 2 (Docket No. 1).

## II.

## MOTION FOR SUMMARY JUDGMENT

Respondent asserts, in his Motion for Summary Judgment (Docket No. 10), that Petitioner is not entitled to relief on any of his claims, based on alternative theories. The Court now reviews each claim.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure.  Rule 11, Rules Governing Section 2254 Cases.  Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80–81 (1977).  The Court now addresses each of Respondent's arguments.

**A.     Claim One**

Claim One is whether the state court erred when it found that trial counsel's failure to obtain the grand jury transcript did not prejudice Petitioner regarding his allegation that trial counsel was ineffective, violating Petitioner's Sixth Amendment rights.

MEMORANDUM ORDER  3

1.      *Teague*

Respondent first argues that *Teague v. Lane*, 489 U.S. 288 (1989), prevents Petitioner from bringing Claim One in this forum because he seeks a new procedural rule on collateral review. When a *Teague* defense is raised, the Court is required to address it before addressing the merits of the claim. *Horn v. Banks*, 536 U.S. 266 (2002).

To determine whether a claim is barred by *Teague*'s non-retroactivity principles, a reviewing court engages in a three-step process. First, the court must ascertain the date on which the defendant's conviction and sentence became final. *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994). "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301. Second, the court must survey "the legal landscape as it then existed" to determine whether existing precedent compelled a finding that the rule at issue "was required by the Constitution." *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997). If the rule is considered "new," the court must proceed to the third step and determine whether either of the two announced exceptions applies. *Teague*, 489 U.S. at 307. The presumption against retroactivity is overcome only if the new rule prohibits "a certain category of punishment for a class of defendants because of their status or offense," *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002), or presents a new "watershed rule of criminal procedure" that enhances accuracy and alters our understanding of bedrock procedural elements essential to the fairness of a particular conviction. *Teague*, 489 U.S. at 311.

Here, Petitioner's conviction was final on March 11, 2001, ninety days after the Idaho Supreme Court denied his petition for review (December 11, 2000). The governing precedent for Petitioner's ineffective assistance of counsel claim is *Strickland v. Washington*, 466 U.S. 668

MEMORANDUM ORDER  4

(1984).  Because *Strickland* existed at the time Petitioner's conviction became final, his claim does not call for a new rule that would violate *Teague*.  *See Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).[1]  Therefore, the Court proceeds to the merits of Petitioner's claim.

    2.    <u>Merits</u>

In order to obtain federal habeas corpus relief from a state court judgment, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

> 1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 385 (2000), the United States Supreme Court explained that, to prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts."  *Ramdass v. Angelone*, 530 U.S. 156, 165–66 (2000) (citing *Williams v. Taylor*).  Alternatively, a petitioner can prevail by showing that the state court was "[objectively]

---

[1] The *Williams* Court stated:
> The threshold question under AEDPA is whether Williams seeks to apply a rule of law that was clearly established at the time his state-court conviction became final.  That question is easily answered because the merits of his claim are squarely governed by our holding in *Strickland v. Washington* . . . .
>
> . . . .
>
> . . . This Court's precedent "dictated" that the Virginia Supreme Court apply the *Strickland* test at the time that court entertained Williams' ineffective-assistance claim.  *Teague*, 489 U.S., at 301.  And it can hardly be said that recognizing the right to effective counsel "breaks new ground or imposes a new obligation on the States," *ibid*.

529 U.S. at 390–91.  *See also Ferrizz v. Giurbino*, 432 F.3d 990 (9th Cir. 2005) ("Parallel considerations govern whether a rule is 'new' under *Teague* and whether it is an extension beyond established federal law under § 2254(d).  *See Williams*, 529 U.S. at 379-81.").

MEMORANDUM ORDER  5

unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled," *Ramdass v. Angelone*, 530 U.S. at 166 (citing *Williams v. Taylor*); however, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

A criminal defendant has a constitutional right to the assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963). In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally-inadequate representation. To succeed on such a claim, a petitioner must show (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) that the petitioner was prejudiced thereby. *Id*. at 684. Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

In disposing of Petitioner's claim, the Idaho Court of Appeals determined as follows:

> Doe's claims of ineffective assistance from his counsel's failure to obtain the grand jury transcript and failure to adequately preserve his double jeopardy defense for appeal are interconnected. He contends that if counsel had obtained the transcript of the grand jury proceeding, it would have revealed that the prosecutor obtained the indictment by use of Doe's immunized statements, and this would have led to dismissal of the charge for conspiracy to traffic in cocaine. He contends that his attorney's failure to do so was prejudicial, notwithstanding that the cocaine conspiracy count was ultimately dismissed as a part of his plea agreement, because if the conspiracy count had been dismissed for prosecutorial misconduct, Doe would have gone to trial on the marijuana charge rather

MEMORANDUM ORDER  6

>than pleading guilty.  This would have preserved for appellate review the rejection of his double jeopardy defense.  Thus, Doe's claims of prejudice from counsel's failure to obtain a transcript of the grand jury proceeding turns upon the viability of his double jeopardy defense.  Because we conclude that the double jeopardy challenge is not meritorious, we need not separately address his claim that his attorney failed to uncover prosecutorial misconduct in the grand jury proceeding.

*State's Exhibit D-5*, at pp. 3–4.

Based upon the facts and the Idaho Court of Appeals' reasoning, this Court concludes that the Idaho Court of Appeals' opinion rejecting Claim One is not an unreasonable application of *Strickland*.  Because Petitioner's defective indictment claim depends upon a favorable resolution of his meritless double jeopardy claim, his defective indictment claim fails.  Counsel was not deficient for failing to raise the issue, nor was Petitioner prejudiced by the omission.

**B.     Claim Two**

Claim Two is that trial counsel was ineffective for failing to pursue a permissive interlocutory appeal on the ground that Petitioner was subjected to double jeopardy because he was punished both by incarceration and by a fine under the Illegal Drug Tax Act, I.C. § 63-4201, *et seq*.  On March 24, 2004, the Idaho Court of Appeals determined that the fine was for sales tax, and, as a result, determined that a permissive appeal would have been meritless and that counsel was not ineffective for failing to pursue such an appeal.  *State's Exhibit D-5*, at pp. 4 & 5.

     1.     *Teague*

Respondent first argues that this claim is *Teague*-barred.  Because there was clear precedent guiding this area of the law at the time the Idaho Court of Appeals decided Petitioner's claim, the Court concludes that Petitioner's claim is not *Teague*-barred; rather, it fails on the merits, which the Court will now address.

MEMORANDUM ORDER  7

     2.     <u>Merits</u>

Precedent governing this issue include *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767 (1994), and *Hudson v. United States*, 522 U.S. 93 (1997).  In *Kurth Ranch*, the United States Supreme Court established four factors for the lower courts to review when determining whether a former tax collection bars a subsequent criminal prosecution based on the same circumstances (1) whether the rate of taxation is unusually high; (2) whether the tax has deterrent purposes; (3) whether the tax is conditioned upon commission of a crime; and (4) whether the tax is levied on goods that the taxpayer no longer owns nor possesses.  *Id*. at 780–83.     In *Hudson*, the Supreme Court disavowed its previous method of double jeopardy analysis set forth in *United States v. Halper*, 490 U.S. 435 (1989), and cases relying on *Halper*.  However,  *Hudson* specifically did not overrule *Kurth Ranch*, a post-*Halper* case.  *See* 522 U.S. at 102 n.6.  *Hudson* adopted a seven-factor test to determine whether multiple state actions regarding the same incident or transaction violate the Double Jeopardy Clause.  Particularly, a court must review: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment – retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."  *Hudson*, 522 U.S. at 99–100.

The *Hudson* Court opined that whether an illegal drug tax act is a criminal or civil penalty is initially a matter of statutory construction.  *Id*. at 99.  Most notably, *Hudson* held that

MEMORANDUM ORDER  8

"only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id*. at 99–100 (internal citation omitted).

The Idaho Court of Appeals reviewed Petitioner's case according to the *Kurth Ranch* principles, and determined as follows:

> We conclude that the district court properly denied this claim because the evidence presented by Doe does not support his assertion that the tax stamp imposed by the Idaho State Tax Commission was pursuant to the Idaho Drug Stamp Tax Act. To prove his assertion that he had been subjected to an illegal drug tax, Doe presented a copy of a "Notice of Jeopardy Assessment" that he received from the Idaho State Tax Commission. However, this notice does not show an assessment pursuant to the Illegal Drug Stamp Tax Act. According to the document, Doe had been assessed a sale/use tax in the amount of $3,750. The document refers to I.C. § 63-3620(d), which is part of the chapter on sales tax, and refers to Doe's "failure to produce or display seller's permit," which is consistent with the assessment being for a sales tax violation. Finally, the amount of the tax assessed to Doe also supports the conclusion that the tax was far below the $3.50 per gram drug tax rate for marijuana which is set forth in I.C. § 63-4203(2)(a). Because Doe's claim that he was subjected to a punitive drug stamp tax is refuted by the evidence, he has not shown that his purported double jeopardy defense would have been successful even if it had been preserved for appeal by his attorney.

*State's Exhibit D-5*, at p. 5. Because the Idaho Court of Appeals found that the assessment was not pursuant to the Illegal Drug Tax Act, it did not reach the *Kurth Ranch* factors.

The Court concludes that the Idaho Court of Appeals' opinion is supported by the facts. At the statutory rate of $3.50 per gram for the seventy-five pounds of marijuana Petitioner possessed, he would have been assessed a tax of $119,067.99 under the Illegal Drug Tax Act.[2] However, the evidence before the Idaho Court of Appeals showed that Petitioner was assessed only $3,750, and that $2,416 had been seized from him on arrest. Petitioner was never assessed

---

[2] Petitioner noted in his state appellate brief that the street value of the marijuana was $97,500.00. *State's Exhibit D-1*, at p. 49.

MEMORANDUM ORDER  9

a sum close to the $119,000 figure that would have been due under the Idaho Illegal Drug Tax Act.[3]

Even accepting Petitioner's argument that the less-than-$10,000 sum he was assessed *was* pursuant to the Idaho Illegal Drug Tax Act, his claim still does not warrant relief. The *Hudson* case, available to, but not addressed by, the Court of Appeals, adds strength to Respondent's position, given the nature of Idaho's Illegal Drug Tax Act, upon which Petitioner argues he was penalized.[4] I.C. § 63-4207 appears to designate the tax and a penalty for nonpayment of the tax as *civil* taxation plus a *civil* penalty; it notes that a criminal penalty may also be imposed pursuant to I.C. § 37-2732. In addition, payment of the tax is not conditioned on the commission of a crime; a person is able to pay the tax anonymously, and tax officials are strictly prohibited from reporting such payments to authorities for the purpose of criminal prosecution. *See* I.C. § 63-4206. Further, the tax is to be paid immediately upon a person's possession of illegal drugs; it does not arise only after arrest. *See* I.C. § 63-4205.

The federal courts can consider cases from other circuits to aid in determining the reasonableness of the Idaho court's decision in Petitioner's case. *See Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 1999). Upon a very similar illegal drug tax statute, the Tenth Circuit found no Double Jeopardy violation. *See Padavich v. Thalacker*, 162 F.3d 521 (8th Cir.

---

[3] The Court also rejects Petitioner's argument in his Addendum (Docket No. 16) that the Idaho State Tax Commission's citation to I.C. § 63-*3057*, "Distraint on personal property," which is generally applicable to all tax collection matters, connects his taxation to the Idaho Illegal Drug Tax Act, which is a completely different section beginning in I.C. § 63-*4201*.

[4] Petitioner earlier requested that he be able to introduce into evidence a recent, post-appeal letter from the Idaho State Tax Commission stating that the tax *was* a drug assessment. However, even if he could show proper foundation for the contents of the letter given its age in comparison to his conviction, he still cannot show that he was, in fact, assessed the amount set forth in I.C. § 63-4203. Therefore, the letter contradicts the actual amount of tax assessed, and, if permitted in this action, would not show that the Idaho Court of Appeals' opinion was unreasonable.

1998). The Fourth Circuit also denied federal habeas corpus relief on similar facts. *See Vick v. Williams*, 233 F.3d 213 (4th Cir. 2000).

As a result of all of the foregoing, the Court concludes that § 2254 habeas corpus relief is not warranted on Claim Two because the state court decision is not contrary to or an unreasonable application of governing United States Supreme Court precedent.

**C.   Claim Three**

Claim Three is whether the district court erred when it found no prejudice arising when trial counsel was unsuccessful in having Petitioner's immunized statements excluded from the Presentence Investigation Report and when it failed to grant a new sentencing hearing.

   1.   Ineffective Assistance of Counsel

There are no specific United States Supreme Court decisions particularly governing ineffective assistance of counsel claims in the context of noncapital sentencing, and so it is unclear whether habeas corpus relief under § 2254(d)(1) may be granted. *See Davis v. Griggs*, 443 F.3d 1155, 1158 (9th Cir. 2006) (granting relief on § 2254(d)(2) claim but rejecting § 2254(d)(1) claim for lack of precedent).[5] Even assuming that *Strickland* would govern such claims, the Court concludes that relief under § 2254(d)(1) would not be warranted in Petitioner's case. In *Davis*, the court left open the possibility that habeas corpus relief under § 2254(d)(2) is

---

[5] The *Davis* Court reasoned:
> [A]s we have previously recognized, the *Strickland* Court "expressly declined to 'consider the role of counsel in an ordinary sentencing, which . . . may require a different approach to the definition of constitutionally effective assistance.' " *Cooper–Smith*, 397 F.3d at 1244(quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052). Moreover, since *Strickland*, the Supreme Court has not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases. *Id*. Therefore, as we said in *Cooper–Smith*, there is no clearly established federal law as determined by the Supreme Court in this context. *Id*.
>   We note that, even though the *Strickland* standard does not by necessity apply to the noncapital sentencing context, the Nevada courts were nonetheless free to adopt that standard for use in this context, as they appear to have done. *Id*. However, because there is no clearly established Supreme Court precedent that applies to this context, we are unable to grant Davis habeas relief on this ground.

443 F.3d at 1158.

MEMORANDUM ORDER   11

available if a habeas petitioner can show that the state court's decision is based on an unreasonable determination of the facts.  Hence, this avenue for relief is open to Petitioner.

Petitioner's attorney had originally filed a motion to exclude any of Petitioner's immunized statements from the Pretrial Sentence Investigation Report (PSI).  The Court denied the motion as premature prior to the PSI.  At the sentencing hearing, Petitioner's counsel again tried to bring the issue to the attention of the Court.  However, Petitioner interrupted his attorney and said "Forget it.  I don't want to say anything."  Petitioner's attorney then withdrew his prior request to strike portions of the PSI; the Court asked Petitioner if he agreed with Petitioner's attorney's withdrawal of the request to strike; and Petitioner agreed.  *See State's Exhibit D-5*, at p. 6; *see State's Exhibit A-4*, at pp. 47–48.  It appears that, at the end of sentencing, the state court later declared that it would deny the motion to strike for the record.  *State's Exhibit A-4*, at p. 71.

On this ineffective assistance claim, the Idaho Court of Appeals determined:

> It is clear from the transcript that Doe's counsel was following up on the previous motion by asking the court to strike items from the report.  It was Doe who then interrupted his own attorney and prevented the attorney from continuing to address the issue.  Doe cannot now blame his attorney for ineffectively presenting the matter when the attorney was cut short in his efforts by Doe himself.  Accordingly, the district court did not err in denying Doe's petition on this ground.

*State's Exhibit D-5*, at p. 6.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case.  *Strickland*, 466 U.S. at 697.  On habeas review, the Court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial.  *Id.*  Here, based on the foregoing, the Court concludes that there is no deficient performance.  Petitioner's counsel attempted to set forth the areas of the PSI

MEMORANDUM ORDER  12

to be stricken, and Petitioner himself stopped counsel from doing so. There is nothing unreasonable about the Idaho Court of Appeals' decision in that respect.

Further, the Court finds no prejudice occurred. It is Petitioner's burden to show that it is reasonably probable that the outcome would have been different had counsel performed adequately. *Id*. at 694. Petitioner had a very lengthy history of crimes, especially drug trafficking crimes, at the time of his sentencing. His current offense involved a very large quantity of marijuana, clearly intended for sale. Drug trafficking is a far-reaching crime that negatively affects society in multiple ways. To protect society, a long sentence was warranted simply based on Petitioner's history, without consideration of any immunized statements that may have appeared in the PSI Report.

As the Idaho Court of Appeals noted on direct appeal,

> Wilhelm had a criminal record of nine misdemeanor convictions, including convictions for malicious injury to property, obstructing an officer, and bail jumping. He also previously had been imprisoned on convictions for distribution of cocaine and assault on a federal officer. The latter conviction arose after Wilhelm tried to run down a Drug Enforcement Administration agent with his car at the Spokane airport where Wilhelm had been observed picking up a shipment of cocaine.

*State's Exhibit B-4*, at pp. 8–9. In addition, Petitioner was on supervised release from federal prison on a cocaine possession charge when he was arrested with the seventy-five pounds of marijuana in his possession.

If the Court assumes that *Strickland* applies, it concludes that no § 2254(d)(1) relief is warranted because there was neither deficient performance by his counsel nor prejudice resulting from the inclusions in the PSI report. Likewise, Petitioner has pointed to nothing in the record that shows that the state court decision is based upon an unreasonable determination of the facts. Petitioner has pointed to nothing to explain why his counsel should have acted further when

MEMORANDUM ORDER  13

Petitioner instructed him otherwise.  For example, while Petitioner asserts that he has several mental disorders, there is nothing in the record showing that Petitioner was *mentally incompetent* at the sentencing hearing.  In addition, Petitioner argues that his counsel was talking about the wrong agreement; however, Petitioner could have asked to speak to his attorney in private to clarify the matter rather than telling the judge to "forget it."  *See Petitioner's Response* (Docket No. 14, at pp. 3–4).  Because there are no facts in the record supporting a § 2254(d)(2) claim, Petitioner's claim is subject to denial.

      2.      <u>Trial Court Error Re: Not Granting New Sentencing Hearing</u>

Construing Petitioner's Petition liberally, the Court finds that Petitioner also separately argues that the trial court should have granted him a new sentencing hearing on the basis that the trial court did, in fact, consider his immunized statements.  The state courts considered this argument in the context of an ineffective-assistance-of-counsel claim, but not as a separate claim.  Petitioner did not present a federal basis for this claim in his state appellate briefing, *see State's Exhibit D-1* at p. 52, but Respondent has not argued that the claim is procedurally defaulted.  In his Petition, Petitioner provides a factual basis for the claim in *Kastigar v. United States*, 406 U.S. 441, 460 (1972), which stands for the principle that the prosecution has an affirmative duty to prove that the evidence it will use is derived from a legitimate source wholly independent of the immunized testimony.

The state appellate court did not separately address Petitioner's contention on appeal of his post-conviction case, but considered the issue solely as an ineffective-assistance-of-counsel claim.  However, because the *Kastigar* issue is necessarily resolved as a part of the ineffective-assistance-of-counsel claim, the Court considers the basis for the state court's decision.

MEMORANDUM ORDER  14

Petitioner rests his *Kastigar* argument on the sentencing court's statement, "I can't ignore what's there," where the state court was referring to the PSI Report, *State's Exhibit A-4*, at p. 71. Addressing the facts surrounding this statement, the state post-conviction court found:

> The sentencing judge's statement may certainly reflect that notwithstanding Wilhelm's protected statements the entirety of the information presented at sentencing indicated the depth of Wilhelm's involvement in both marijuana and cocaine drug distribution. After he was arrested on the marijuana charge and prior to any immunity agreement, Wilhelm admitted that the Mexicans from whom he received the marijuana were picking up several kilograms of cocaine five of which he expected by Friday and that they offered to sell both heroin and methamphetamine. Wilhelm had served seven years in prison for distribution of cocaine and also served time for attempting to run down a DEA agent with his car where he was observed picking up a shipment of cocaine. He was returned to prison after dealing in cocaine on work release. At his sentencing he acknowledged that he was involved in the dealing of illegal drugs. Of course, the charges before the court involved seventy-five pounds of marijuana. There is no question that Judge Haman considered the fact that Wilhelm had dealt in large quantities of drugs when he imposed sentence. This picture was clear without considering his statements in the debriefing.
>
> Additionally, Frampton (former trial counsel) testified at the evidentiary hearing when Wilhelm appeared for sentencing he could not have behaved worse. In addition to admitting that he was the biggest cocaine dealer in North Idaho[,] Frampton attributed Wilhelm with calling the prosecutor a "fucking punk" and having beat his wife to a pulp the night before. Frampton submitted the testimony of Dr. Barr and tried to offer other mitigation to the court. The resulting sentence was supported by the nature of the offense and the extent of Wilhelm's prior record and behavior at sentencing and was not materially affected by any statements or ineffective representation by Frampton.

*State's Exhibit C-1*, at pp. 214–15.

A *Kastigar* claim is subject to a harmless error analysis. *United States v. Gregory*, 730 F.2d 692, 698 (11th Cir. 1984), *cert. denied* 469 U.S. 1208 (1985). *Accord, United States v. Beery*, 678 F.2d 856, 863 (10th Cir. 1982). It appears from the foregoing state court decision that the state post-conviction court conducted a harmless error analysis in reaching its decision

MEMORANDUM ORDER  15

regarding the Court's statement, "I can't ignore what's there."  The Ninth Circuit has instructed federal habeas courts reviewing state court rulings of harmless error to first determine whether the state court's harmless error application was objectively unreasonable.  *Inthavong v. LaMarque*, 420 F.3d 1055 (9th Cir. 2005).

Based upon the foregoing and Petitioner's briefs and exhibits in his federal case, this Court concludes that the state court's decision that the resulting sentence was not materially affected by any immune statements is not contrary to, or an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d)(1).  As the facts set forth above show, the non-immunized evidence presented at the sentencing hearing was overwhelming and supports the sentence given.  Neither has Petitioner rebutted the presumption of correctness accorded to the state court's fact findings, *see* 28 U.S.C. § 2254(e)(1), nor has he shown that the state court's determination of the facts was unreasonable based upon the evidence presented to it, *see* 28 U.S.C. § 2254(d)(2).  As a result, this claim is subject to dismissal with prejudice.

### III.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 10) is GRANTED.  Petitioner's Petition is dismissed with prejudice.



DATED:  **August 8, 2006**.

_____
Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

MEMORANDUM ORDER  16